5-18-04-9-2 Good afternoon. May it please the court, counsel, co-counsel, Mr. Dow, gentlemen, please. I think I covered everybody. I wanted to start, I represent Plaintiff Appellant Jessica Musgrave. And I wanted to start with the standard of review I've mentioned in the brief. The plaintiff's position on the standard of review for the denial of a post-trial motion or for most of the evidentiary rulings that the court made, the trial court made, is abusive discretion. Now, in this case, I think there is a question on the verdict that we had. The trial court, in my view, did not discuss the plaintiff's proven injuries, but simply said, I'm going to defer to the jury's decision, which I find is not unreasonable, again, without discussing proven injuries. Now, it does not appear the court exercised discretion on that issue, so on that issue of the verdict and injuries, standards should be denoted. On the other hand, she did go on to say, I have carefully considered the motion, post-trial motion, the response, and the reply, and I deny the motion for a new trial, and I deny the motion for a trial on the issues of damages only. So she did state that she carefully considered all of it, in which case the standard would be abusive discretion. The verdict entered by the jury in this case ignored and failed to award proven damages. The jury entered verdict form B, which states, we find for Jessica Musgrave and against the following defendant or defendants, and then below was Callie Carter. They checked yes, and right below that was Carter Limited. They checked no. So of the four boxes that were there to determine liability, Cal, yes, Carter Limited, no. And then they went on to award, I'm sorry, zero damages. On the second page, they found 50 percent contrived on the part of the plaintiff, and then they still awarded zero damages. So verdict form B was not the form they should have used, or they filled it in improperly, which is where I think we're headed here. So I want to review the injuries briefly because I think they are the key to this entire case, or the entire appeal, rather. Jessica's car had front and side impact airbags. All of the airbags in the car, front and side, deployed as the car – What about verdict form B as to the corporation? Didn't the jury find in favor of the defendant corporation against the plaintiff? They did, but it is our position that this is a compromise verdict and that there is no way to tell – the Supreme Court keeps saying that you have to determine the intent, the intent of the jury by their verdict. And I don't think there is any way to pull pieces out of a compromise verdict like this and say that this was clearly – they were given 16 blanks. They had to fill in 14 of them, and we're trying to say that 13 of them were wrong and one of them was right. And if I may give you an example, again, thinking of the possibilities, because the defense came up with three. I came up with an additional four of the possibilities that the jury intended. One is that six jurors wanted to find for plaintiff and award damages. Six jurors wanted to find for both defendants verdict form C, no damages. In order to compromise, the six who wanted to find for the plaintiff agreed not to have any damages. The ones who wanted no damages agreed to find for the plaintiff as opposed to the defendants. So in that way, they entered a verdict in favor of the plaintiff and awarded zero damages. As far as those particular check marks, three people who wanted to find for the plaintiff and award damages decided that Carter Limited was not the principal and that Kelly Carter was not the agent at the time of the crash. The other night said, yes, she was. There was evidence that, and that's why the judge let her go to the jury, there was evidence that she was acting in the scope of her agency. She was provided with a vehicle for her own use. Everything about it, the vehicle itself, all the maintenance, all the gas, everything about it was paid for by Carter Limited. The jury was entitled to consider, then, that any time she used the car, she was acting as a Why else would she have a car for a business except if she would basically advertise a corporation by driving their car? So there was that, and then there was also evidence that she was making a delivery at the time of the occurrence. So that was something the jury could consider. And it very easily could be the three people who wanted to find for the plaintiff just simply refused to find against Carter Limited. And given this verdict form, I think that is as reasonable a hypothesis as anything else. So you're asking for a new trial on all issues? For everything, yeah. For all defendants? Completely over. Because I just, you know, if you throw in the jury's question here, which, and I actually need to, I apologize to get the exact wording, I kind of need to look that one up. Okay. Jury Q. So they've been deliberating for a while. The jury came back with a question. If we voted verdict B, who does the settlement go to, or if any, if we do 51%, who gets 51% and who gets 49%? I think, I have personally no idea how to interpret that. Again, we have come up with various hypotheses that are in our briefs. I've got no way, who gets the money? They're asking, can we give the defendant money under certain circumstances? And they're saying, you know, if we do give, I mean, how? Do we give them 51%? Do we give them 49%? If we give them 51%, who gets the money? And there's a question about the money because, as mentioned earlier, there were proven damages, which the jury ignored. And I think what may have happened is we kept telling them, the defendants had made a number of admissions, and we kept telling them that with these admissions, this was not a matter they needed to consider. And then we also gave them the insurance instruction, which, of course, says at the end of the case, you know, the judge were making adjustments. And I think it's very easy to think with a question like that that what the jury had done was decide or think that they didn't have to do anything with these admissions. These admissions were already determined. They didn't have to decide those. So who's going to take care of that at the end of the trial? The judge. It could be very easily that they awarded all these zero because they thought the judge would come back or already had determined where the money related to those admissions had gone. But they are asking in their question. They're obviously confused. I think it's hard to say that they were following the instructions. But if we voted verdict B, who does the settlement go to? If we vote 51%, who gets 51%? Who gets 49%? They had no idea that they're the ones who are supposed to determine that. And the only answer we could come up with was to give them the instruction on verdict form B, which they already had, and tell them to consider or to continue their deliberations. And based on that question, there is absolutely no indication that answering it by giving them another copy of the instruction helped them in any way fill out the verdict form. Because they still came back with all those zeros, yet the finding in favor of the plaintiff. So, yes, having said that, we are asking for trial, you know, a new trial on everything, all matters, including liability versus Cali Carter, Carter Limited, and then the damages. Because the jury did not understand the instructions, or they chose to ignore the instructions, or this was a compromised verdict. And once it's compromised, there were a couple of different cases that one of them, Manders, was an element of a Supreme Court case where, again, they talk about divining the intent of the jury, or ascertaining the intent of the jury from the verdict form. And in that one, if I recall correctly, Mrs. Manders was injured in a car crash. Her husband filed a law ‑‑ he was not there. He filed a lawsuit in search of the claim, not for his personal injuries, but for his wife's injuries. The jury came back and awarded $6,000 to the wife, and awarded zero out of the lawsuit consortium. The appellate court decided, the Supreme Court confirmed, that there were, again, indisputable damages to the husband. He testified to time he had missed from work, and he had some other costs, which at the moment I don't recall. But the husband said, you know, the Supreme Court said the husband is entitled to a new trial. But because of the circumstances of this case, because his verdict was based, you know, the lawsuit consortium was based on her verdict, they gave him a whole new trial. They threw out her damages award, which the trial in the appellate court had both said was reasonable. They threw that out, a new trial on all issues. And, again, that was a derivative claim that they did that, because they decided the jury had either not followed the instructions or compromised. And Theofanis, I think, is another case where they did about the same thing. I believe that was a structured work act case. The plaintiff, the jury found a favorable plaintiff against both defendants, and split liability up against one defendant and a third party defendant, and split liability 50-50 between them. It seems like the determination of liability is readily ascertainable. They said it would be fine for the plaintiff against these two and split it. They also awarded zero damages. And the court said, and there are a number of decisions, including by the Supreme Court, that say a verdict in favor of the plaintiff with a zero damage award is evidence of a compromised verdict. So in that case, what the court did was they threw out the entire verdict, not just the damages portion. And they tried it even though the jury had established 50-50 between the defendant and the third party defendant for liability. So that, I mean, any one of those fits this situation. The plaintiff had, you know, the airbags went off, paramedics come, she's got an abrasion on her chest. This is in her brief. One of the paramedics talks about the abrasion on her chest. And then talks about how her right upper extremity was exquisitely painful. And the other, I'm sorry, that was an emergency medical technician. The paramedic noted that the right hand, the right hand was painful, and she had a deformity over the middle knuckle of the middle finger of her right hand. She goes to the emergency room. She complains about the middle knuckle. And I'm leaving out all the back stuff that they admitted. I'm just going with this knuckle. They examined it. They x-rayed it. The x-rays show a foreign body piece of glass in her knuckle. Dr. Bieler, the ER doc, tried to extract it. Dr. Bieler, the ER doc, could not extract it, so he referred her to Dr. Moult, a surgeon. Dr. Moult saw her a couple of times and took care of her. So we have the ambulance documenting a piece of glass, essentially, in her finger, the hospital with an x-ray and then the doctor's physician's examination documenting that, and then Dr. Moult. Those expenses related to that are indisputably and objectively caused by this crash. The ambulance, the ER, the radiologist, and Dr. Moult total about $12,574.10. The jury is required to award that. Now, if they wanted to shave something off of any of those, fine. If they decide that the ER bill is high and that the ER doc should only charge $1,500 for trying to treat her finger and the x-ray, okay. They had an obligation to award proven medical expenses, and those were proven. If you want to go down to the admissions, we kept asking, we asked for a number of admissions, and what we find is, I'm sorry, before we get to the admissions, Dr. Van Fleet, who was the defendant's expert, did not criticize any of the treatment up through physical therapy. And after she had gone to physical therapy, then she ended up with a spinal cord stimulator. He said she should have had more physical therapy. That was the defendant's expert. If we go just through physical therapy, Jessica, and this is our exhibit 84, Jessica had $21,423.76, and her doctor, her doctor, I'm sorry, defendant's doctor says she should have had more physical therapy than that. So again, proven, undisputed, and there were a number of admissions here that are binding, and that's if we told the jury they were binding. There are a number of admissions here that they made regarding, and this is a number regarding each treater that she went to with the exception of Dr. Mott. And he said, well, his name was Mott. And with each of these admissions, in closing, defense counsel said, we all know about the injuries. We've heard these admissions ad nauseam. No one ever suggested that she was not injured, which would have allowed zero dollars here. That was never suggested. We had the admissions. We had the indisputable medical evidence. This was a compromised verdict. Now, what was the jury trying to do? And again, the Illinois Supreme Court in Manders said a verdict should be examined with a view to ascertaining the intention of the jury in returning the verdict. And specifically apropos to this case, the court also stated, we consider these observations valid whether a single verdict standing by itself is examined or whether more than one verdict are examined as they relate to each other as here. They were talking about the husband's loss of the consortium claim. I'm talking about Carter Limited and Kelly Carter being on the verdict form. I assume when Mr. McDonald has an opportunity to argue his part of the case, that he is going to be arguing that it is not in our use of discretion to deny retrial as to the corporation. Would you respond to that? Sure. Well, again, the one thing there is if this was a compromised verdict, the courts have held that fining for the plaintiff with zero damages is evidence of a compromise. And they've reversed. In every case I cited, when we fined, they reversed when they found that there were proven elements of damages that the jury ignored or failed to award. And I think that is what we have here. And, again, as a compromised verdict, I think the cases pretty much establish it, and I think Manners Court did right here when they said you have to examine how the verdicts, I'm sorry, more than one verdict. They're examined as they relate to each other as here. Kelly Carter, the verdict against Kelly Carter was compromised. As such. I'm asking about the corporation. As such, I don't think there is a way to separate out whether there was a compromise with Carter Limited. And I think that was what the court found in Theofanis. That's what the court found in Manners. In both cases, there were related verdicts, like on liability, and the court did not let them stand. And, again, I think it was Theofanis where they found in favor of the plaintiff and against a defendant. Defendant had sued third-party defendant. Jury split the liability. They're 50-50. And the court made them do it all over again because there was a compromise. I have no doubt that the third-party defendant in that case was arguing, you know, 50-50, let us stand. Or maybe the defendant was arguing 50-50, let us stand. But they were arguing, you know, one of those two was arguing that the verdict on liability should stand. The court said no. You know, this is a compromised verdict. If they compromised liability as to one of you, I think they don't say it, but I think there's a presumption or at least a concern that they compromised liability as to the other. And I think that is the exact situation we have here. So, you know, we'll see how that goes. What color am I? I'm sorry. And I will – I do plan on responding to whatever the suit comes to. You do have an opportunity to reply. Thank you. So I would like to point out that in their brief, in this case, the response brief, they don't discuss damages at all – or, I'm sorry, injuries at all. And that's why I'm back to we've got that finger. There's no question about that one. They can't later hypothesize of what was going on. We've got indisputable evidence of damages, and that was never discussed in their brief. So, interestingly, the defendant in his response at page 14 said the jury didn't believe the plaintiff. They ignored – which would mean they ignored admissions. After being instructed by the court, you must accept these admissions as true. And they ignored the glass embedded in her finger. On page 12, they said that the court or the jury improperly expressed a finding for Callie Carter using the wrong form. I don't know how they can seriously argue that where it says we find for the plaintiff Jessica Musgrave and against Callie Carter, and they actually had to check a box to do it. And then the box right below it, they checked that they didn't find it in favor of Carter Limited. I'm sorry. I got that example backwards. Against Callie and in favor of Carter Limited, it's hard to say that they picked the wrong version. More likely, the jury meant to check the box next to Carter Limited, finding against both defendants. In the response brief to the post-trial motion, they thought that the jury believed that finding a 50 percent fault resulted in no word of damages to Musgrave. I guess that's possible. But it's no more likely than any of the others. Those three hypotheses as to the intent of the jury were from the defendant. I think the jury question indicated that they were confused. I thought the jury could have thought they had to go 50-50 so that no one gets money. And I think from the verdict, it's kind of easy to understand that the jury didn't really like the plaintiff. But I think the way they did it with that question, kind of indicates they didn't like anybody and they just wanted everybody to go home. Counsel, you will have an opportunity to resort. Thank you. Counsel for Appalachians, I believe you've left your notes somewhere. I feel like I don't have none. May I please report? Counsel, Justice Morey, you're right. I'm going to say that the corporation should be out of this case. And I'm not going to try and woof you and say you can have a verdict where the jury finds 50-50 fault and then awards no damages. You can't. And there should be a new trial after Kelly Carter. I'd like to stretch them. You have the Peace v. McGovern, that new case that says the jury can disregard pretty much anything anyone says, believe what they like, even when there's admissions. Well, we do appreciate your tenure. Well, I mean, let's just be realistic. But Carter Limited is in a totally different boat. Carter Limited, that's not a derivative action like the consortium claim. It's not a contribution claim. The evidence is that Kelly Carter was driving that vehicle to church that morning with her three children. That's strictly an agency theory, isn't it? Correct. And I would admit, she's driving a vehicle owned by Carter Limited. So on its face, knowing nothing else. Wasn't there some kind of evidence about some boxes? Could be believed or not believed? Well, I say not believed, but certainly there was some evidence about boxes, contending that that morning she was loading up boxes and bringing them to church to give to her father-in-law, which was very much disputed. But that, we overcame the presumption of agency of just driving someone else's vehicle. So they had to have some more evidence of her acting as an agent. And so that would have been the only evidence that they would have had that she was acting as an agent, that she was transporting these boxes. But that was not believed, I guess, by the jury. It's separate and distinct as to the two of them. So like I said, in all candor, I think the court has to award a new trial.  They said 50-50. And for whatever reason, the jury gives zeroes, whether they misunderstood and thought 50-50 meant zero or who knows. Well, I agree with you, and I think that your question to the court illustrated just how confused they were. Yes, and I wish I could have helped formulate an answer to that one, but that was almost an unanswerable question without arguing. And I assume both of you were the counsel at trial. Yes, sir. Yes, sir. So they got back an answer that juries always find rather unsatisfactory. You've got your instructions, read them again. And sometimes it does them good, sometimes it doesn't. Unfortunately, that's what happened in this particular instance. But to say that they compromised as for Carle-Limited, there's no indication of that. That was a hotly contested issue on the agency, and the jury came down on that. They filled out an X to the box that said no for Carle-Limited, and that should stand. You know, in the briefing, there was a lot made of some evidentiary – well, I shouldn't say evidentiary hearings – a hearing the Friday before trial started on a motion to compel that was brought by the plaintiff against nonpartists, Pekin Insurance and an insurance agency. And there was an effort to bring to trial insurance agents and underwriters from Pekin and all this to try and get – well, I think to try and get insurance infused into it. But all of that – they didn't preserve that issue anyway, I would say that. But all of that was totally – I don't see anywhere in the record that that issue was before us. Well, it's briefed, but it's somewhat obtuse perhaps. They talk about the nonproducing documents. What issue that is, I'm not sure I recall that issue. Well, there was some insurance documentation that was argued that wasn't given or phoned it up or whatever. And Judge Harrell threw that all out the Friday before and didn't let – bring all that insurance into the trial. Evidentiary rulings are abuse of discretion standard, so – But I would also say, I mean, take a look – I don't think the issue was preserved. So maybe I don't have to say anything more about that. Although my veracity was challenged in the reply brief, and I don't want to get on a big toot about that, but I would say that was an inaccurate representation of what I had to say. So I'll leave it at that. I don't think Mr. Gunner will bring that up anymore. There's a lot of other issues that were briefed. And really most of them are just non-consequential to the issue that you have before you. Are they consequential that no trial was granted? I'd say not. Nothing that couldn't be dealt with at the trial level. That's my best guess on that. Because most of the – there was an issue about the police report. Well, all the evidence came in anyway that was in the police report. No, I really don't think any of those issues are – All the issues are covered in the briefing. Yes, sir. Anyway – And those are all abuse of discretion. Yes, sir. I'm going to sit down unless you have something to ask me. Thank you. Thank you. I was hoping she wasn't going to reset the clock. I just jumped in. Okay. I do think this is a derivative claim in that his principal agent – You're talking about the corporation? Yes. Without – I'm sorry. Without the jury finding against Callie Carter, Carter Limited has no liability. And it's purely on agency theory. We did not allege that any other negligence by Carter Limited. So I would think that is a derivative theory. Now, we did talk a lot about boxes. There was a lot of testimony about boxes. But, again, I also examined both – Capital is only to the issue of agency. Yes. Yes. Absolutely. And I examined both Mr. Carter and Callie Carter about who paid for, who got the complete benefit of that car, and the answer was Callie Carter. Everything was paid for by the corporation. And you just don't get that stuff for free. There has to be some quid pro quo, which is she acts as its agent at all times simply by being out and about in their vehicle. I argued that to the jury. Whether or not some of them accepted it, I don't know. But, again, it's a derivative claim. Theofanis was also a derivative claim because Theofanis v. Serafi found for the plaintiff, there were zero damages, and then split between a defendant and a third-party defendant. That claim was derivative. Without the finding of liability as to the defendant, the third-party defendant definitely had no liability. So a jury was not free there to find against just the third-party defendant corporation. Here, they were not free to find against just Carter Unlimited. It was a derivative claim. So, again, in Theofanis, the court said we can't tell where the compromise was. We can't tell if it was. . . I mean, we know they compromised both liability and damages. And we don't know exactly who compromised what. We can't make any sense out of this verdict because it's a compromise verdict. Got to do the whole thing over. You know, one of the things that I mentioned the defense argued in its brief before this Court was that the jury, you know, I lost it. You've seen the verdict before. I kind of lost it. Anyway, that the jury used the wrong form to find the defendant, Callie Carter. So if we took that argument, what the defense is arguing is that they checked the wrong box. They should have checked the other box. Again, we have a compromised verdict. I don't think that, you know, I know that Mr. McDonald didn't make it here. But there was a thought that a wrong box got checked. It could have been the wrong box was checked for Carter Unlimited. And that is kind of why we think, and again, with the case law, that one. . .     But I do think the court decided that this was an abuse of discretion standard that we need not bind it. I believe Carter's. . . I believe. . . Actually, I believe every case I cited, Manders and the offense, were abuse of discretion standards toward a derivative claim. I mean, if the court decides, based on case law and the indisputable evidence of injury, that this was a countermind verdict, then yes, I think the abuse of discretion was not granted in the trial in its entirety, as I. . . And that's as I read the defense in Manders. Gentlemen, do I have any other questions? I'm standing on a break for the day. All right. Thank you, counsel. The court will take this matter under advisement and issue its decision in due course.